## HARBER v. GLEDHILL et al.

No. 3744.   Decided August 17, 1922.   (208 Pac. 1111.)

1. HOSPITALS—PHYSICIANS AND SURGEONS—FACTS HELD TO CONSTITUTE ASSUMPTION OF DUTY, THOUGH PATIENT HAD SPECIAL NURSE. In an action against a hospital and surgeons connected with its staff for burns from a hot water bottle sustained by the plaintiff while unconscious after an operation, where it was shown that the individual defendants, the operating physicians, carried the patient from the operating table to her bed, defendants must be *held* to have assumed the duty to exercise ordinary care to know that the bed was safe, though plaintiff had employed a special nurse.

2. TRIAL—INDISTINCT MEANING OF WORD "CARE" IN INSTRUCTION HELD NOT REVERSIBLE ERROR. In instruction referring to the

contract of plaintiff with defendant as a contract "to furnish an operation, room, and care after the operation," objected to on the ground that the use of the word "care" was improper, because plaintiff had hired a special nurse to care for her after the operation, *held* not prejudicially erroneous, when considered with the charge as a whole.

Appeal from District Court, Sixth District, Sevier County; *Wm. F. Knox,* Judge.

Action by.Mora M. Harber against Dr. T. R. Gledhill, Dr. R. G. Clark, and the Richfield General Hospital. From a judgment for plaintiff, defendants appeal.

AFFIRMED.

*E. E. Hoffmann,* of Richfield, and *Chas. H. Hart,* of Salt Lake City, for appellants.

*Bagley, Fabian, Clendenin & Judd,* of Salt Lake City, for respondent.

WEBER, J.

Mora M. Harber went to the Richfield General Hospital, at Richfield, Utah, for the purpose of having performed an operation for appendicitis. She was severely burned while at the hospital, and instituted suit against the hospital, a corporation, and Drs. Gledhill and Clark, members of its staff. A jury returned a verdict in her favor for $3,657. From the judgment thereon entered, defendants prosecute this appeal.

In the complaint it is alleged that on September 12, 1919, plaintiff was received at the Richfield General Hospital as a patient, and that it undertook for pay to furnish her with board and lodging and competent nurses to care for her, and to perform a surgical operation upon her, which was performed on her by the defendants Drs. Gledhill and Clark; that immediately before the operation was commenced respondent was reduced to a state of unconsciousness by the

administration of an anæsthetic, and that while she was still in this unconscious condition the two surgeons removed respondent, still unconscious, to a bed that had been prepared for her reception in another room. The acts of negligence charged were that a large rubber bottle containing water heated to a very high and excessive degree of temperature had been by a servant and employé of the Richfield General Hospital, acting in the course of her employment for defendant Richfield General Hospital, negligently and carelessly and wrongfully placed in said bed, and that the defendant Richfield General Hospital and said employé negligently and carelessly and wrongfully failed and neglected to remove said water bottle before or when the plaintiff was placed in said bed, and that plaintiff was by said defendants Drs. T. R. Gledhill and R. G. Clark placed in said bed and laid upon said hot water bottle, where the same had been placed by the servant and employé of the defendant aforesaid, so that it came into close contact with the plaintiff's right leg, whereby the calf of her leg was dangerously and severely burned; that the defendants Drs. Gledhill and Clark failed and neglected to make any inspection of said bed, and failed to notice its condition or contents and the large rubber water bottle therein contained, but negligently and carelessly placed plaintiff, being then in an unconscious condition, in said bed and upon and against said bottle, which by the exercise of ordinary care would have been discovered by said defendants.

In their answer the appellants deny all charges of negligence and allege as an affirmative defense that, if any injury occurred to the plaintiff at the time and place alleged in the complaint, such injury occurred through the carelessness and negligence of plaintiff and her servant, by said plaintiff and her servant placing a rubber bottle containing water heated to a high degree of temperature in said bed occupied by plaintiff and permitting her leg to come in contact therewith; that, if such a bottle containing water heated to an excessive degree of temperature was placed in plaintiff's bed, the same was so placed by the plaintiff or her servant, and not by or

with the consent or knowledge of the defendants, or either of them..

It is undisputed that the respondent was operated upon by Drs. Gledhill and Clark while she was in an unconscious condition, and that after the operation, and while in such condition, she was by them taken from the operating table and carried to and laid on a bed which contained three hot water bottles. The evidence as to who placed them in the bed is uncertain and unsatisfactory. Nor is that issue of any importance. They were placed in the bed by some one, and one of the bottles contained water that was excessively and dangerously hot. Mrs. Bean had been employed as a special nurse by the patient. It was her duty to attend the bed and to nurse the patient. At the request of the plaintiff's mother, this special nurse administered the anæsthetic when the patient was in the operating room. When the surgeons arrived at the bed, two hot water bottles were observed by them, and the nurse who had accompanied them from the operating room was ordered by the physicians to "remove those hot water bottles." Two were removed by the nurse, a third remaining in the bed. Before the patient regained consciousness her leg was severely burned. The plaintiff testified that after she left the hospital she visited Dr. Gledhill at his office, and was told by the doctor, in substance, that he saw the water bottle in the bed, but did not think it was hot. This testimony was vigorously contradicted by Dr. Gledhill, who testified that he made no such statement.

Appellants insist that in the light of the evidence the instructions contained prejudicial and reversible error. In several of the instructions of which complaint is made the contract of respondent with appellants is referred to as a contract "to furnish plaintiff with an operating room and furnishings and care after the operation"; the particular objection being to the word "care," for the reason that "plaintiff had employed a special nurse to look after those matters, which was known to the doctors, and it was her duty to do so." The contention of appellants is that they agreed to perform the operation, furnish room and board, and that, as

respondent had employed a special nurse, whose duty it was to look after the bed and attend to the patient after the operation, they owed her no further care—that they had nothing to do with what was placed in the bed, or taken out of or left in it. Had the surgeons done nothing more than perform the operation, had they not assumed the additional task and duty of conveying the patient to her bed and placing her therein, the contention of counsel would be sound. Having undertaken to carry the patient to her bed and putting her in the bed, it was their duty to know that the bed was free from anything that might harm or endanger the helpless patient. They had no right to close their eyes and rely upon some one else to protect the unconscious patient from danger.

In the instruction which is specially criticised by counsel the meaning of the word "care" is not clear; but, when the instruction is read as a whole, it is apparent that a jury of average intelligence could not misconceive its import. It may be divided into two parts, as follows:

"You are further instructed that, under its contract with the plaintiff to furnish plaintiff with an operation, room, and furnishings and care after said operation, said defendant hospital and the said defendant doctors as the servants of said hospital owed plaintiff the duty to exercise reasonable care, skill, and prudence in their acts under said contract."

The second part being:

"And if you find from a preponderance of the evidence that said defendants did not exercise reasonable care in failing to remove an excessively hot water bottle from the bed, and if you find that such a hot water bottle was in the bed into which the defendant doctors placed plaintiff, and if you further find from a preponderance of the evidence that the failure to remove said hot water bottle, if one was in said bed, was the proximate cause of the injury complained of by the plaintiff, then your verdict should be for the plaintiff in such sum as damages as you find from the evidence she suffered as a result of the injury as alleged in her complaint."

The appellants certainly owed their patient some care after the operation—the care of conveying her to and furnishing her with a safe bed—care which they had assumed, even if it was not implied in their contract with respondent. But, regardless of the view that may be taken of this in-

struction, conceding that in connection with the con-          2
tract between plaintiff and defendants the use of the
word "care" was erroneous, the instructions, when taken in
their entirety, submitted with clarity the question: Who was
to blame for the accident, the doctors or the special nurse?
Thus, among instructions given at the request of the appel-
lants was the following:

"You are further instructed that, if you find from a prepond-
erance of the evidence that Mrs. Bean was employed by the plaintiff
as her special nurse to nurse and care for her during the operation
which the defendants performed on her and pending her recovery
while in the hospital of the defendants, and that a part of her duties
as such nurse were to look after the comfort of the plaintiff and to
take care of the plaintiff's bed, and that while the said Mrs. Bean
was in said employment of the plaintiff she removed some of the
water bottles containing hot water from the plaintiff's bed, but
negligently failed to remove the hot water bottle from which the
plaintiff was injured, and that by reason of such negligence the
plaintiff's right leg was laid upon said hot water bottle and burned,
then the negligence of said nurse, Mrs. Bean, is imputed to the
plaintiff, and the plaintiff cannot recover, and your verdict must
be 'No cause of action.'"

Another instruction of similar import was given at the re-
quest of appellants. When the instructions are read and con-
sidered as a whole, the fault found with a few of them be-
comes insignificant; and it is inconceivable that what may be
conceded to be an improper use of a single word could have
influenced the deliberations of the jury. The test is whether
the result would have been different, had the word "care" in
the connection in which it was used been omitted. Undoubted-
ly the query must be answered in the negative.

There being no good reason for believing that appellants
were prejudiced and injured by the alleged error, the judg-
ment should be and is affirmed.

CORFMAN, C. J., and GIDEON, THURMAN, and
FRICK, JJ., concur.